**United States District Court**
**Central District of California**

FILED
CLERK, U.S. DISTRICT COURT
JUN 27, 2018
CENTRAL DISTRICT OF CALIFORNIA
BY: BH DEPUTY

Oliver Naimi et al.,

Plaintiffs,

v.

Starbucks Corp. et al.,

Defendants.

LACV 17-6484-VAP (GJSx)

# Order Granting Defendants' Motion to Dismiss Second Amended Complaint (Doc. No. 32)

On February 28, 2018, the Court granted a Motion to Dismiss filed by Defendants Starbucks Corporation, Starbucks New Venture Company, PepsiCo, Inc., and North America Coffee Partnership (collectively, "Defendants"), but allowed Plaintiffs Oliver Naimi and Thomas Wessel ("Plaintiffs") leave to amend. (Doc. No. 28.) Plaintiffs filed their Second Amended Complaint ("SAC") on March 23, 2018. (Doc. No. 31.)

On April 20, 2018, Defendants filed the pending Motion to Dismiss or in the alternative, to Strike the Nationwide Class Allegations. (Doc. No. 32 or "Motion".) Plaintiffs filed their Opposition on May 18, 2018 (Doc. No. 35 or "Opp'n"), and Defendants filed their Reply on June 8, 2018 (Doc. No. 36 or "Reply").

United States District Court
Central District of California

After consideration of the papers filed in support of, and in opposition to, the Motion, and the arguments of counsel at the June 25, 2018 hearing, the Court GRANTS the Motion.

## I. REQUEST FOR JUDICIAL NOTICE

Along with their motion, Defendants filed a request for judicial notice. (Doc. No. 34.) Defendants request judicial notice of the following documents:

1. Screenshot of a webpage from the Starbucks Doubleshot website, Dark Chocolate, STARBUCKS DOUBLESHOT COFFEE DRINKS, http://doubleshot.com/drinks.html#protein-dark-chocolate;
2. Screenshot of another webpage from that website, Coffee, STARBUCKS DOUBLESHOT COFFEE DRINKS, http://doubleshot.com/drinks.html#coffee;
3. December 15, 2017 printout of a webpage from a website by third party DHD, depicting a "Double Shot" branded surfboard, Double Shot, DHD, http://shop.dhdsurf.com/surfboards/doubleshot;
4. Screenshot of a webpage from a website by third party Corsair, depicting a "Double-shot" branded keyboard, CORSAIR GAMING PBT Double-shot Keycaps Full 104/105-Keyset — Black, CORSAIR, http://www.corsair.com/en-us/corsair-gaming-pbt-double-shot-keycaps-black;
5. December 15, 2017 printout of a webpage from a website by third party Gerard Cosmetics, depicting a "Double Shot" branded lipstick, Double Shot Metal-matte Liquid Lipstick, GERARD COSMETICS,

United States District Court
Central District of California

United States District Court
Central District of California

https://www.gerardcosmetics.com/double-shot-metal-matte-liquid-lipstick.html.

In the Declaration of Megan K. Lollar filed with Defendants' Motion, (Doc. No. 33, hereinafter "Lollar Decl."), Defendants assert that the Court may view the following webpages under the incorporation by reference doctrine:

A. Screenshot of a webpage from Starbucks's website regarding espresso in Starbucks handcrafted espresso beverages, Espresso, STARBUCKS COFFEE CO., https://www.starbucks.com/coffee/espresso, excerpted from SAC ¶ 26 n. 6;

B. True and correct copy of the Starbucks Fiscal 2002 Annual Report, https://s22.q4cdn.com/869488222/files/doc_financials/annual/2002/ar02_narrative.pdf, excerpted from SAC ¶ 27 n. 8.

Plaintiffs have not objected to the Court's consideration of these materials. The Court GRANTS Defendants' Request and will take judicial notice of these documents. Exhibits 1-5 are judicially noticeable for the fact that the word "doubleshot" may refer to non-espresso products. Fed. R. Evid. 201(b)(2); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010). The Court may consider Exhibits A and B to the Lollar Declaration because those documents are incorporated by reference in the SAC. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

## II. BACKGROUND

On September 1, 2017, Plaintiff Naimi, on behalf of himself and others similarly situated, filed a putative class action complaint alleging consumer claims regarding Defendants' Doubleshot® Espresso–branded products. (Doc. No. 1.) On November 20, 2017, Naimi, joined by Plaintiff Wessel, filed the FAC. (Doc. No. 19.) The FAC asserted thirteen claims against Defendants, including violations of California and New York consumer protection statutes, breach of warranty under California and New York law, common law fraud, misrepresentation, quasi contract, restitution, and unjust enrichment. (FAC ¶¶ 52-165.)

On February 28, 2018, the Court dismissed the FAC with leave to amend. (Doc. No. 28.) In brief, the Court determined that: 1) the "Starbucks Doubleshot® Espresso" name does not make plausibly false or misleading representations regarding the products' espresso content; 2) no reasonable consumer plausibly could be deceived because the "Starbucks Doubleshot® Espresso Name" is neither deceptive nor false; 3) the warranty claims failed because the "Starbucks Doubleshot® Espresso" name does not give rise to express or implied warranties and the products do not breach any alleged warranties; 4) the fraud and misrepresentation claims failed because there was no actionable falsity or deception; and 5) the quasi contract, unjust restitution and restitution claim failed because it was based on an implausible misrepresentation. (See generally id.)

The SAC largely duplicates the FAC, with a few notable differences, described below. Just as in the FAC, the thrust of the SAC concerns

United States District Court
Central District of California

United States District Court
Central District of California

Defendants' use of the term "Doubleshot®" in their canned beverages sold in store and online at various grocery stores, gas stations, and convenience stores.[1] Specifically, Plaintiffs allege that Defendants labeled and marketed their canned Starbucks Doubleshot® Espresso—Espresso & Cream product (the "Product") as containing "a 'doubleshot' of 'Starbucks' brand 'espresso,'" when in actuality the product does not contain two shots of Starbucks brand espresso. (SAC ¶¶ 1-4.) The Product bears the name "Starbucks Doubleshot® Espresso," and is described as a "premium espresso beverage." (Id. ¶¶ 20-23.) The nutritional information on the back of each Product can lists "brewed espresso coffee" as the first ingredient, but the cans do not expressly state the amount of caffeine or espresso in each 6.5 fluid ounce can. (See id. ¶ 20.)

Plaintiffs claim the Product does not contain two shots of Starbucks brand espresso, but that based on Defendants' representation of the Product, the Product should contain two shots of Starbucks Espresso Roast, and consumers reasonably expect two shots of Starbucks Espresso Roast in the Product. (Id. ¶¶ 35-38.) In support of this allegation, Plaintiffs point to Starbucks's representations that Starbucks has been "selling and using only one roast of espresso—the Starbucks Espresso Roast—since 1975 and that the Starbucks Espresso Roast goes into every espresso beverage [Starbucks] make[s] around the world." (See id. ¶¶ 26-27.) As an example, Plaintiffs point to the doppio espresso beverage brewed using the

---

[1] Unlike the FAC, which was directed towards four of Defendants' Doubleshot® products (*see* Doc. No. 17 ¶ 18), the SAC lists only the Espresso & Cream product.

Starbucks Espresso Roast ("Starbucks brand espresso") that Starbucks offered in its stores during the class period, which Starbucks describes as "two shots of espresso." (Id. ¶ 29.) According to an "independent laboratory analysis of 20 doppio espresso samples from multiple Starbucks store locations," two shots of Starbucks espresso "contains 136.3 mg of caffeine on average." (Id. ¶ 30.)

Plaintiffs then cite "[a] recent national survey conducted among a demographically representative U.S. sample of over 400 consumers of the Product," which demonstrated that "based on the name and complete label of the Product, over 89% of those consumers believe that the Product contains two shots of Starbucks brand espresso." (Id. ¶ 33.) The survey was conducted by an independent market research company. (Id.) Plaintiffs allege that the Product does not and cannot contain two shots of Starbucks brand espresso because of the amount of caffeine contained in the Product, as evidenced by an "[i]ndependent laboratory analysis of 20 samples of the Product," which demonstrated that the Product contains only 120.0 milligrams of caffeine "on average." (Id. ¶¶ 38-39.) Plaintiffs additionally surmise that the "deficient caffeine content" in the Product is on account of the Product either 1) not containing the same quantity of espresso (fluid ounces) as two shots of Starbucks brand espresso and/or 2) not containing the same quality espresso ("different roast, dilution, technique, etc.") as two shots of Starbucks brand espresso. (Id. ¶ 41.)

Starbucks allegedly knew or should have known that the Product does not contain two shots of Starbucks brand espresso in each can and

United States District Court
Central District of California

United States District Court
Central District of California

that consumers like Plaintiffs would rely on the representation that the Product contained two shots of Starbucks brand espresso. (Id. ¶¶ 50-51.) Plaintiffs allege they purchased the Product believing that each Product contained "two shots of Starbucks brand espresso." (Id. ¶¶ 12, 13, 53.) They state that they and the putative class members paid a premium for the Product because they "would have paid significantly less for the Product had they known that the Product does not contain two shots of Starbucks espresso," and that they "would not have purchased the Product at all had they known that the Product does not contain two shots of Starbucks espresso." (Id. ¶ 53.)

In the SAC, Plaintiffs bring twelve claims: (1) violation of California Civil Code § 1750 et seq.; (2) violation of California Business and Professions Code § 17200 et seq.; (3) violation of California Business and Professions Code § 17500 et seq.; (4) violation of New York General Business Law § 349; (5) violation of New York General Business Law § 350; (6) breach of express warranty under California law; (7) breach of implied warranty under California law; (8) breach of express warranty under New York law; (9) common law fraud; (10) intentional misrepresentation; (11) negligent misrepresentation; and (12) quasi contract, restitution, and unjust enrichment. (See generally id. ¶¶ 70-173.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short,

United States District Court
Central District of California

plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, "[t]he court must accept as true the facts alleged in a well-pleaded complaint, but mere legal conclusions are not entitled to the presumption of truth." ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1031 (9th Cir. 2016). Moreover, "[t]he court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; accord Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court also may consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

Moreover, if a plaintiff's allegations sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Id. This standard applies to state law claims sounding in fraud that are brought in a federal action. Vess v. Ciba-Geigy Corp. USA , 317 F.3d 1097, 1102-03 (9th Cir. 2003). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the

United States District Court
Central District of California

heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." Id. at 1107.

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give Defendants notice of the particular misconduct so that they can defend against the charge [.]" Id. at 1106 (internal quotations marks and alterations removed). To satisfy this pleading standard, courts typically require the pleadings to "'identify 'the who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV. DISCUSSION

### A. The SAC's New Allegations Do Not Alter the Court's Previous Determination That the "Starbucks Doubleshot® Espresso" Name Does Not Make Plausibly False or Misleading Representations Regarding the Product's Espresso Content

The foundation underlying all of Plaintiffs' claims in the SAC is that the Product does not contain the exact equivalent of a doppio and that the Product's lack of "two shots" of Starbucks brand espresso amounts to deception on the part of Defendants. As Defendants argue, however, "nothing on the Product's label or packaging can plausibly be construed as a representation that it is the equivalent of a doppio or contains 'two shots' of espresso," and "Plaintiffs still have not alleged facts plausibly

United States District Court
Central District of California

demonstrating that the Product *lacks* 'two shots.'" (Reply at 3.) The Court agrees with Defendants and reiterates its previous finding that that the Product's brand name is neither false nor misleading and that it does not make any affirmative representation about the Product's espresso content.

First, the Court declines to accept the truth of the single allegation concerning the survey referred to in the SAC for its failure to satisfy the pleading burden outlined in Twombly and Iqbal. See Iqbal, 556 U.S. at 678 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); see also ESG Capital Partners, 828 F.3d at 1031 ("mere legal conclusions are not entitled to an assumption of truth"). The survey, which according to the SAC, was conducted by an "independent market research company"[2] among "a demographically representative U.S. sample of over 400 consumers of the Product demonstrated that based on the name and complete label of the Product, over 89 % of those consumers believe the Product contains two shots of Starbucks brand espresso." (SAC ¶ 33.) This is the extent of the detail regarding the survey provided in the SAC; the SAC fails to include information regarding the name of the survey, how it was conducted, what questions the survey contained, how the "independent market research company" arrived at its conclusion, or any other details that would tend to suggest that the survey is reliable.[3] The lack

---

[2] Defendants have also pointed out that Plaintiff's counsel stated during the Local Rule 7-3 meet-and-confer discussion that Plaintiff's counsel commissioned the "independent" survey, but declined to provide further details about the survey on account of attorney-client privilege. (Motion at 9 n.3).

[3] In their Opposition, Plaintiffs cite several cases in which district courts accepted survey and laboratory test results to bolster their argument that the Court must "accept Plaintiffs' survey allegations as true "[e]ven if their truth

United States District Court
Central District of California

United States District Court
Central District of California

of factual detail regarding the survey leaves the Court no choice but to regard it as an unsupported conclusory allegation that fails to cross the line from conceivable to plausible. See Poppedeskar v. Dannon Co., Inc., 16-cv-8478, 2017 WL 6001845, at *2-4 (S.D.N.Y. Dec. 3, 2017) (citing Twombly, 559 U.S. at 570). In determining whether a claim is plausible, a "context-specific task," the Court is permitted to "draw on its judicial experience and common sense." Ebner v. Fresh, Inc., 838 F.3d 958, 863 (9th Cir. 2016) (quoting Iqbal, 556 U.S. at 679). Here, the Court's judicial experience and common sense dictate rejection of Plaintiff's survey allegation.[4] Moreover, as this allegation fails under Twombly and Iqbal, it

---

seems doubtful." (Opp'n at 8-10 (citing Dover v. British Airways, PLC (UK), No. 12 CV 5567 RJD MDG, 2014 WL 5090021, at *2 (E.D.N.Y. Oct. 9,. 2014)). These cases, however, are distinguishable, as none of them include an allegation as bare and unsupported as what Plaintiffs ask the Court to accept here. The Court will not deviate from its obligation to assess allegations under the well-established standard set forth in Twombly and Iqbal.

[4] At the hearing, Plaintiff's counsel pointed out that in Shalikar v. Asahi Beer U.S.A., Inc., the court found sufficient the plaintiff's allegation regarding survey evidence that "more than 86% of the 'demographically representative U.S. sample of over 1,000 adults' who viewed the Product or its packaging, believed that it was produced in Japan," and found that the plaintiff had sufficiently alleged that a significant portion of the general public could be misled. Case No. LA CV 17-02713 JAK (JPRx), 2017 WL 9362139, at *8 (C.D. Cal. Oct. 16, 2017). Asahi, however, is distinguishable from this case because the court's conclusion was premised upon the complaint's other allegations regarding the "words, pictures, [and] diagrams," and the prominent display of Japanese characters and script, which in their totality, permitted a reasonable inference that the product's label was misleading. See id. The Asahi court then noted that this conclusion was "also supported by the survey evidence alleged in the SAC." See id. (emphasis added). Here, the allegations regarding the Product's label and packaging do not permit such an inference, and the survey allegation alone is too conclusory to be entitled to the presumption of truth.

also therefore necessarily fails under the heightened pleading standard of Rule 9(b).

Second, the Court agrees with Defendants that the SAC's allegation that "Starbucks uses the same Starbucks Espresso Roast in 'every espresso beverage [Starbucks] make[s] around the world" is an unsupported conclusory allegation that fails to support Plaintiffs' theory of liability. (See Motion at 11 (quoting SAC ¶ 27).) Having taken judicial notice of the source cited in the SAC, the Court is aware that the source of the above quoted statement is Starbucks's annual fiscal report from 2002, which was published over sixteen years ago. (Lollar Decl., Ex. B.) The quotation from the SAC was extracted from a vignette describing how Starbucks would continue its coffee sourcing practices at its new store in Madrid: "The first delivery of coffee to [the new Madrid Starbucks] was freighted from our roasting plant in London a few days before the store was due to open. There was Espresso Roast, the same coffee that goes into every espresso beverage we make around the world. Sumatra and Colombia, Caffe Verona® and House Blend were there, too, freshly roasted, delivered right on time." (Id. at 10.) Again, drawing on its judicial experience and common sense, Ebner, 838 F.3d at 864, the Court disagrees with Plaintiff's characterization of this statement as an "admission" that all Starbucks espresso beverages – including its canned beverages – contain Starbucks Espresso Roast. (See Opp'n at 23.) The statement obviously refers to espresso beverages prepared by baristas in Starbucks stores in 2002 and cannot realistically be imputed to refer to Starbucks canned beverages purchased in 2016 and 2017. The "roast"

United States District Court
Central District of California

allegations therefore fail to support Plaintiffs' theory of liability against Defendants.

Third, the allegations pertaining to a caffeine discrepancy between the Product and a doppio likewise fail to support Plaintiff's theory of liability. According to the SAC, an "independent laboratory analysis" of twenty doppio samples from multiple Starbucks store locations found that "two shots of Starbucks espresso contains 136.3 [milligrams] of caffeine on average" (SAC ¶ 30), and an "independent laboratory analysis" of twenty samples of the Product "demonstrated that the Product only contains 120.0 [milligrams] of caffeine on average" (SAC ¶ 39).[5] From Plaintiffs' perspective, a "shot" of Starbucks brand espresso necessarily indicates a certain quantity of caffeine—and that if the Product does not contain a certain quantity of caffeine, then it does not contain two shots of Starbucks brand espresso.[6] Plaintiffs attribute the caffeine deficiency to the Product

[5] According to Plaintiffs, they "amended their complaint to include independent laboratory testing, rather than information from Defendants [sic] website, in order more [sic] accurately and objectively reflect caffeine levels." (Opp'n at 13.) Thus, in the SAC, Plaintiffs omitted the references to Starbucks's website that were in the FAC describing the nutritional and caffeine content of a doppio beverage and the Product, and now argue that the Court cannot consider these references because they are not mentioned in the SAC. (Id.) The Court agrees with Defendants that this amounts to gamesmanship on the part of Plaintiffs and reflects their efforts to skirt around the Court's reasoning in its previous order dismissing the FAC. (See Reply at 10.) Nevertheless, the Court need not address the issue of whether it is permitted to consider the references to the Starbucks website because there are ample other grounds for dismissal of the SAC.

[6] As Defendants point out, and the Court has observed, a "shot" is not "a readily defined term." (See Mot. at 18.) The vagueness of what a "shot" actually means is therefore yet another reason for the Court to doubt Plaintiff's position—it is unclear whether or not Plaintiff's claim that the product lacks "two shots" is "capable of being proven true or false." See Parent v.



United States District Court
Central District of California

either not containing the same quantity of Starbucks brand espresso, or not containing the same quality espresso as Starbucks brand espresso (presumably, a doppio). The quantity allegation fails because as Defendants point out, "caffeine content is not a 'fixed' or precise indicator of the quantity of espresso in any given product"—a reality that Plaintiffs cannot escape, given their own allegations that the laboratory testing found a doppio contained a certain amount of caffeine "on average" and the Product contained a certain amount of caffeine "on average." (SAC ¶ 39.) As caffeine content varies even among the doppios sampled in the laboratory tests allegedly conducted by Plaintiffs, the Court declines to equate caffeine content with a precise quantity of espresso.

The quality allegation fails as a matter of law under Rubenstein v. The Gap, Inc., 14 Cal. App. 5th 870 (2017). In Rubenstein, the plaintiff alleged that the Gap's use of its brand names in naming factory stores was deceptive because the apparel was of a different quality than what she had come to accept from Gap-branded clothing. Id. at 876. The Court of Appeal affirmed the trial court's dismissal of the plaintiff's claim, finding that "as a matter of law, Gap's use of its own brand name labels on clothing that it manufactures and sells at Gap-owned stores is not deceptive, regardless of the quality of the merchandise." Id. The Court agrees with Defendants that

MillerCoors LLC, No. 3:15-cv-1204-GPC-WVG, 2015 WL 6455752, at *8-9 (S.D. Cal. 2015); see also Vitt v. Apple Computer, Inc., 469 F. App'x 605, 607 (9th Cir. 2012) ("[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact.").

United States District Court
Central District of California

the holding in Rubenstein forecloses Plaintiffs from relying upon the Product's description as a Starbucks premium espresso beverage to allege that Defendants have deceived consumers by not providing a certain "quality" of espresso in the Product, especially given the fundamental differences between the Product and a doppio. Just as the plaintiff in Rubenstein could not allege that Gap was deceptive in not providing the same quality of product in its factory stores as its traditional stores, nor can Plaintiffs here allege that Defendants were deceptive in not offering the same quality of espresso in its canned beverages as they do in Starbucks coffee shops.

Having considered the changes between SAC and the FAC, the Court again concludes that Plaintiffs have failed to plead facts supporting a plausible inference that the Product in fact does not contain two shots of espresso. It remains implausible that a reasonable consumer would think that the Product is literally a doppio, given the SAC's own allegations pertaining to the differences between the Product and a doppio. The Product does not state that it contains two shots of espresso, nor does it state that it is a doppio. (SAC at 6.) The Product is a canned beverage sold at various grocery stores, gas stations, and convenience stores containing brewed espresso coffee, milk, sugar, cream, and skim milk. (Id. at 6, ¶ 21.) The doppio, however, is a beverage prepared by baristas in Starbucks stores intended for immediate consumption containing only brewed coffee and water. (See id. ¶ 29.) Thus, contrary to Plaintiff's arguments, a reasonable consumer would not expect the Product to contain a doppio.

United States District Court
Central District of California

The Court reiterates its previous finding that the brand name "Doubleshot®" does not plausibly represent anything regarding the quantity or quality of Starbucks brand espresso in the Product. The name "Doubleshot" does not make any plausible affirmative representation about the Product's contents. Nor does it credibly denote a specific, measurable quantity of espresso content, let alone a quantity at all. "Doubleshot" is not even a word that exclusively describes espresso, as it may refer to products not containing espresso (Doc. No. 34-1, Exs. 1-5), or non-espresso products sold by Defendants (Lollar Decl., Exs. A-B).

Plaintiffs have not identified any other facts supporting their contention that Defendants marketed, advertised, and sold the Product in a manner that was false or deceptive. Again, Plaintiffs have failed to plead facts sufficient to allege plausibly that the Product's "Starbucks Doubleshot® Espresso" name is false or misleading, or that the name makes any representation about the Product's espresso content. As discussed below, this failure to plead adequate facts is fatal to all of Plaintiffs' claims.

**B. No Reasonable Consumer Plausibly Could Be Deceived Because the "Starbucks Doubleshot® Espresso" Name Is Neither Deceptive nor False**

Defendants argue that Plaintiffs' claims brought under the California Consumer Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), California False Advertising Law ("FAL"), and sections 349 and 350 of the New York General Business Law ("GBL") (i.e., the first through fifth claims) must fail because no reasonable consumer could be deceived by

United States District Court
Central District of California

the "Doubleshot" brand name, which is neither false nor misleading. (See Motion at 13-17.)

The CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 680 (2006).

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL — unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007). A violation of the FAL "necessarily violates" of the UCL. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)).

The FAL prohibits the dissemination of false or misleading statements in connection with advertising. Cal. Bus. & Prof. Code § 17500. "Section 17500 has been broadly construed to proscribe 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" Colgan, 135 Cal. App. 4th at 679 (alteration in original) (quoting Kasky, 27 Cal. 4th at 951).

United States District Court
Central District of California

United States District Court
Central District of California

Section 349 of the GBL proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). "To state a claim under the New York deceptive acts statute, a plaintiff must allege a material deceptive act or practice directed to consumers that caused actual harm." Marcus v. AT&T Corp., 138 F.3d 46, 63 (2d Cir. 1998). Section 350 of the GBL proscribes "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. "The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to section 349." Goshen v. Mut. Life. Ins. Co., 98 N.Y.2d 314, 324 n.1 (2002). To state a prima facie case for violation of these sections of the GBL, "a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the plaintiff was thereby injured." Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) (citing Stutman v. Chem Bank, 95 N.Y.2d 24, 29 (2000), and Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009)).

Consumer claims under the CLRA, UCL, and FAL "are governed by the 'reasonable consumer' test." Williams, 552 F.3d at 938. Under this standard, a plaintiff must "show that members of the public are likely to be deceived." Id. (internal quotation marks and citation omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003); see also Hill v. Roll Int'l Corp., 195 Cal. App. 4th 1295,

United States District Court
Central District of California

1304 (2011) (stating the test "requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances," not that the "least sophisticated consumer" or "the unwary consumer" would be deceived (emphasis removed)). Dismissal is appropriate when "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." Williams, 552 F.3d at 939 (construing Freeman v. Time Inc., 67 F.3d 285 (9th Cir. 1995)).

A similar test governs the GBL claims. See Ackerman, 2010 WL 2925955, at *15 (applying the reasonable consumer test from Williams to UCL, FAL, CLRA, and GBL claims). To determine whether a practice or advertising is deceptive or misleading under the GBL, "the court must determine whether 'the defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances.'" Uhm v. Humana, Inc., 620 F.3d 1134, 1152 (9th Cir. 2010) (quoting Solomon v. Bell Atl. Corp., 777 N.Y.S.2d 50, 52 (N.Y. App. Div. 2004)) (construing § 349); accord Marcus, 138 F.3d at 64 ("An act is deceptive . . . only if it is likely to mislead a reasonable consumer."). Furthermore, under New York law, a plaintiff must allege that he suffered injury as a result of the defendant's deception. Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (2000). Such injury, however, must not be pled under the "flawed 'deception as injury' theory'"—"that consumers who buy a product they would not have purchased, absent a manufacturer's deceptive commercial practices" have suffered an injury under GBL § 349. Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-04697 (CM), 2016 WL 6459832, at *7

(S.D.N.Y. Oct. 26, 2016) (citing Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999)).

In the SAC, Plaintiffs repeat the FAC's allegation that a reasonable consumer could be misled by the Product's name to believe that the Product's representation as containing a "doubleshot" of "Starbucks" brand "espresso" contains two shots of Starbucks brand espresso, though it does not. (See SAC ¶¶ 51-53, 77, 85, 88, 91, 97, 102, 109.) Thus, because the SAC again attempts to equate the Product with a doppio, the SAC's consumer protection claims fail for the same reasons that the FAC's consumer protection claims failed.

As discussed above, the SAC does not allege plausible facts sufficient to support a determination that a reasonable consumer could be deceived by Defendants' practices or advertising with respect to the Product's name. A reasonable consumer would be aware of the fundamental differences between the Product and a doppio. No reasonable consumer could be led to believe from the brand name "Starbucks Doubleshot® Espresso" that the Product contains a doppio or a specific amount of Starbucks brand espresso. Nor does the SAC sufficiently support an inference that the Product name is false, deceptive, or misleading. The alleged facts and the documents and images attached to or incorporated in the SAC do not give rise to an inference that there is less than two shots' worth of espresso in the Product. Moreover, Plaintiff Wessell has failed to allege the requisite "injury" under the GBL, as his allegations fall squarely within the "deception as injury" theory that has been

United States District Court
Central District of California

rejected by New York courts. Izquierdo, 2016 WL 6459832, at *7. As such, Plaintiffs' SAC fails the reasonable consumer test necessary for the maintenance of their consumer protection claims. Consequently, the FAL, UCL, CLRA, and GBL claims must be dismissed.

### C. The Warranty Claims Fail Because the "Starbucks Doubleshot® Espresso" Name Does Not Give Rise to Express or Implied Warranties and the Product Does Not Breach Any Alleged Warranties

Defendants challenge Plaintiffs' breach of express and implied warranties under California law and their breach of express warranty claim under New York law for failure to plead adequate facts to support Plaintiffs' assertions that the Product names give rise to warranties and that the Product breached any of those warranties. (Motion at 17-19.)

Under California and New York law, a seller may create an express warranty by making "[a]ny affirmation of fact or promise . . . which relates to the goods" or "[a]ny description of the goods" if the affirmation or description is "part of the basis of the bargain." Cal. Com. Code § 2313(1)(a)-(b); accord N.Y. U.C.C. § 2-313(1)(a)-(b). To prove a breach of express warranty, a plaintiff must show that (1) the seller made a statement that constituted an affirmation of fact or description of the goods, (2) the statement was part of the basis of the bargain, and (3) the seller breached the warranty. Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010); cf. Gasser v. Kiss My Face, LLC, No. 17-cv-01675-JSC, 2017 WL 4773426, at *7 (N.D. Cal. Oct. 23, 2017) ("The New York requirements for

United States District Court
Central District of California

United States District Court
Central District of California

express warranty are identical to California law."). The statement giving rise to the express warranty must be "specific and unequivocal." Chambliss v. GMC, 108 F.3d 1176, 1181 (9th Cir. 1997) (construing California law).

Goods sold in California carry an implied warranty of merchantability if the seller is a merchant with respect to goods of the kind sold. Cal. Com. Code § 2314(1). "Merchantability has several meanings . . . ." Hauter v. Zogarts, 14 Cal. 3d 104, 117-18 (1975). The implied warranty of merchantability, in pertinent part, requires that goods "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

The Court agrees with Defendants that Plaintiffs have failed to state any warranty claims because the name of the Product makes no express or implied affirmation of "two shots" of Starbucks brand espresso or 136.3 milligrams of caffeine. The word "Doubleshot" in the Product name is not the kind of "specific and unequivocal" statement that gives rise to an express warranty, nor is it a "promise or affirmation of fact" regarding the quantity of espresso or caffeine contained in the Product. Even if the name gave rise to such a warranty, Plaintiffs have not averred facts sufficient to support their assertion that the Product does not in fact contain two shots of Starbucks brand espresso. In their Opposition, Plaintiffs merely argue that their survey and laboratory test results demonstrate that they have adequately pleaded warranty breaches under California and New York law. (See Opp'n at 17.) The Court, however, has already determined that the

survey and laboratory allegations should not be accorded the presumption of truth.

Regarding Plaintiff Wessell's argument that the "public advertising exception" negates the privity requirement for New York express warranty claims (Opp'n at 18), the Court finds that exception does not apply here because the SAC lacks any allegations as to any advertisements or sales brochures. Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015). Plaintiff Wessell's New York warranty claim nonetheless fails because the Court has already determined that the Product's name does not plausibly contain any affirmation or representation about espresso or caffeine quantity.

Given the nature and contents of the Product as well as the flimsy allegations Plaintiffs offer in support of their claims, it is implausible to contend that the Product contains less espresso content than two shots of Starbucks brand espresso. The warranty claims must be dismissed.

### D. The Fraud and Misrepresentation Claims Fail Because There Is No Actionable Falsity or Deception

Defendants, noting that Plaintiffs' fraud and misrepresentation claims are brought on behalf of a nationwide class without specifying which state's or states' common law they invoke, argue that the claims must fail under California and New York law because Plaintiffs have not pled facts sufficient to state actionable falsity or deception arising from the Product. (Motion at

United States District Court
Central District of California

19-21.) In response, Plaintiffs argue that their fraud and misrepresentation survive under California and New York law. (Opp'n at 18.)

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation marks and citation omitted). New York law is substantially in accord. Izquierdo, 2016 WL 6459832 at *9 ("[T]he complaint should set forth all the essential elements of such fraud, that is: (1) that the defendant represented or omitted a material fact; (2) that the representation was false; (3) that the defendant knew that it was false and made it with the intention of deceiving the plaintiff; (4) that the plaintiff believed the representation to be true and justifiably acted in reliance on it and was deceived; and (5) that the plaintiff was injured." (citing Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 12 N.Y.3d 236, 242 (2009)).

Intentional misrepresentation claims require the same elements as fraud claims under New York and California law. See Hughes v. Ester C Co., 930 F. Supp. 2d 439, 472 (E.D.N.Y. 2013) (interpreting New York law); Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1021 (N.D. Cal. 2011) (interpreting California law). Claims for negligent misrepresentation are also "similar to intentional fraud," but "the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006); see also Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) ("To state a

United States District Court
Central District of California

claim for negligent misrepresentation under New York law, the plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his detriment." (internal quotation marks and citation omitted)).

In support of the false representation element necessary to state the fraud and misrepresentation claims, Plaintiffs reiterate their argument that the Product's label is false and misleading, that they have adequately pleaded justifiable reliance because they explicitly alleged that they did not visit or review any website information containing information about the Product, and that Defendants' arguments regarding justifiable reliance are premature. (Opp'n at 19.) Plaintiffs, however, have not alleged sufficient facts supporting their contention that such a representation is false; as discussed above, it is implausible on the record before the Court to contend that the Product contains less than two shots' worth of Starbucks brand espresso. They also failed to allege that the Product name represents that the Product contains "two shots" of Starbucks brand espresso, let alone any specified quantity of espresso. The Court thus need not reach Plaintiff's arguments regarding justifiable reliance; their fraud and misrepresentation claims nonetheless fail because Plaintiffs have not adequately pled falsity of any representation arising from the Product's name, as discussed above.

United States District Court
Central District of California

United States District Court
Central District of California

Accordingly, Plaintiffs may not proceed with their fraud and misrepresentation claims.

**E. The Quasi Contract, Unjust Enrichment, and Restitution Claim Fails Because It Is Based on an Implausible Misrepresentation**

The twelfth claim for quasi contract, unjust enrichment, and restitution also rests on an allegation that Defendants "made a misleading representation about the Product to Plaintiffs and members of the Classes to induce them to purchase the Product." (SAC ¶ 169.) Defendants' challenge to the plausibility of the "Doubleshot" representation and its purported falsity applies to all of Plaintiffs' claims, including this one. (See Motion at 7 (arguing that "Plaintiffs' SAC does not include sufficient factual allegations demonstrating that the 'Doubleshot®' label is false or deceptive, which is a core deficiency permeating all of their claims").)

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). Instead, these may be construed as a quasi contract claim. See id. Under quasi contract, plaintiffs may recover restitution by showing that a seller "enticed plaintiffs to purchase [its] products through false and misleading labeling, and that [the seller] was unjustly enriched as a result." Id. (alteration and quotation marks omitted).

In New York, "restitution is the remedy when one party has been unjustly enriched at the expense of another." Ironforge.com v. Paychex,

Inc., 747 F. Supp. 2d 384, 397 (W.D.N.Y. 2010). "[A] claim for restitution, based upon a theory of unjust enrichment, sounds in quasi-contract." Id. "A successful claim for unjust enrichment exists where a party is enriched at the claiming party's expense and it is against equity and good conscience to permit the enriched party to retain what is sought to be recovered." Tompkins Fin. Corp. v. John M. Floyd & Assocs., Inc., 144 A.D.3d 1252, 1256 (2016) (alterations, quotation marks, and citation omitted).

Here, Plaintiffs assert that Defendants received an inequitable or unjust benefit, the additional amount paid for the Product or the proceeds from the sale of the Product, due to Defendants' "misleading representation" regarding the Product's espresso content. (SAC ¶ 169.) Plaintiffs have not alleged facts sufficient to support their claims that the Product contained a misleading representation regarding espresso content, or that the Product does not have the espresso content Plaintiffs say the Product's name communicate. Without an identified inequity or injustice for which the Court may grant a remedy, the Motion must be granted as to this claim.

**F. Amendment Would Be Futile**

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave" to amend "when justice so requires." "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality." Abels v. JBC Legal Grp., P.C., 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). A court considers five factors in "assess[ing] the propriety of a motion for leave to amend: (1) bad faith, (2)

United States District Court
Central District of California

United States District Court
Central District of California

undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended his complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).

This was Plaintiffs' third attempt to plead their claims. The Court's order dismissing the FAC identified specific deficiencies. Despite this, Plaintiffs proved unable to allege facts sufficient to support their claims upon amendment. The Court now dismisses the SAC on the same grounds it dismissed the FAC; the SAC repeated most of the same allegations as the FAC and the SAC's new allegations failed to pass muster under Twombly and Iqbal. Plaintiffs' theory of liability against Defendants is logically untenable and incurably deficient, as described above and in the Court's previous dismissal order. To allow further amendment would be futile. See, e.g., Low v. LinkedIn Corp., 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012) ("[T]he Court finds that amendment of Plaintiffs' … claims would be futile because each claim fails … to cure the deficiencies identified' in an order granting Defendants' motion to dismiss a prior complaint.). Leave to amend is DENIED.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss the Second Amended Complaint.[7] The Second Amended

[7] As the Court determined that none of Plaintiffs' claims are cognizable, the Court need not address the parties' arguments regarding the nationwide class claims.

Complaint is DISMISSED WITH PREJUDICE and judgment will be entered in favor of Defendants.

**IT IS SO ORDERED.**

Dated: 6/27/18

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California